THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SULJEILY LOPEZ-MARTI, ET ALS.,**<br><br>   Plaintiffs,<br><br>   v.<br><br>**GEICO INSURANCE COMPANY, ET ALS.,**<br><br>   Defendants. | **Civil No. 20-1433 (ADC)** |

# JUDGMENT

On August 20, 2020, Suljeily López-Martí ("López-Martí") and Sylvia Nieves-Pepín ("Nieves-Pepín" or "plaintiffs") file the instant action under this Court's diversity jurisdiction.[1] **ECF No. 1**. Plaintiffs filed suit pursuant to "Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann., Tit. 31 §§ 5141 and 5142, and under the Puerto Rico Insurance Code's Direct Action Statute, P.R. Laws Ann., Tit. 26 § 2003, seeking compensatory damages for the injuries sustained by plaintiffs as a result of co-defendant's negligent driving of a motor vehicle." *Id.*, at 1.

For the following reasons, the Court hereby **GRANTS, ADJUDGES, and DECREES** default judgment for plaintiffs.

---

[1] "Both plaintiffs reside in the Commonwealth of Puerto Rico and co-defendants are citizens of Maryland and/or New York and the claims pleaded herein exceed the jurisdictional amount of $75,000.00, exclusive of interests and costs." **ECF No. 1** at 1.

I.      **Factual and procedural background**[2]

   A.      **The accident**

On Friday, December 30, 2016 at approximately 4:10 a.m., plaintiffs, agents of the Puerto Rico Police Department ("PRPD"), were patrolling over the San Antonio Bridge on Puerto Rico Road No. 26, near the intersection with the Ashford Avenue and Dos Hermanos Bridge in San Juan, Puerto Rico.[3] The San Antonio Bridge has four lanes divided in the middle by a concrete traffic island (known in Spanish as "isleta"). Although divided into two sets of two lanes, all four lanes run in the same direction towards Puerta de Tierra, San Juan.

That day, López-Martí was riding as a passenger in the right rear seat of a 2016 Ford Taurus PRPD patrol car, with license plate GE07233, property of the General Services Administration of the Commonwealth of Puerto Rico. Nieves-Pepín was riding as a passenger in the right front seat.[4] The patrol car was traveling on the second lane from right to left, which falls on the right side of the traffic island. Co-defendant Jonathan Elías Rodríguez ("Elías Rodríguez") was driving his 2017 Nissan Rogue rental car[5] on the third lane from right to left, which runs on the left side of the traffic island.

---

[2] The Court accepts the complaint's factual allegations as true for purposes of liability. *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability.").
[3] Another two PRPD Agents were riding in the patrol car with plaintiffs. The other two agents did not join the instant suit.
[4] The other two officers in the vehicle were Agent Víctor Piñero-Kwon ("Agent Piñero") (driver) and Agent Luis Rosario-Coreano (left rear seat passenger).
[5] License plate IUZ 476, property of PR Enterprise Rent a Car.

Once both cars reached the San Antonio Bridge and Dos Hermanos intersection, Elías-Rodríguez made an illegal right-turn towards the Dos Hermanos Bridge. As a result, Elías-Rodríguez crashed into the patrol car hitting the driver's door with "force." *Id*. All four police officers sustained "physical injuries that required emergency medical treatment." **ECF No. 1** at 4. The police officers were initially treated by paramedics at the scene of the accident. Once stabilized, plaintiffs were transported to the Ashford Presbyterian Community Hospital ("hospital" or "emergency room") to receive further medical treatment. *Id*.

PRPD Sargent Miguel A. González, oversaw the police investigation of the accident. He determined that the accident "occurred due to [Elías-Rodríguez]'s negligence when he made an unwarranted right turn impacting" the patrol car. *Id*., at 5.

### B. The first civil action

On October 29, 2019, plaintiff filed a civil complaint in the Court of First Instance, San Juan Superior Court, *Suljeily López Martí, et al, v. PR Enterprise Rent-A-Car, et al*, Civil No.: SJ2019cv11409 (804). On March 11, 2020, plaintiff requested voluntary dismissal of the state action, which the state court granted without prejudice on March 11, 2020, amended *nunc pro tunc* on July 14, 2020.

### C. The instant action and the entry of default

On August 20, 2020, plaintiffs filed the instant against Geico Insurance Company ("GEICO"), Elías-Rodríguez; John Doe, Peter Poe, and Insurance Companies A, B and C ("defendants"). **ECF No. 1**. On the date of the accident, December 30, 2016, GEICO had in full

force and effect a policy of liability or casualty insurance issued to cover for the negligent acts of co-defendant Elías-Rodríguez. Instead of purchasing public liability and casualty insurance from co-defendant PR Enterprise Rent a Car, Elías-Rodríguez chose to rent out the vehicle and have coverage under his GEICO policy. **ECF No. 1** at 3.

Plaintiffs requested the Clerk of Court to issue summons against co-defendants GEICO and Elías-Rodríguez. **ECF No. 1-3, 1-4.** The Clerk of Court issued the summons on August 21, 2020. **ECF No. 4**. Plaintiff submitted an "affidavit of service of process" asserting plaintiffs served process upon co-defendant GEICO. **ECF No. 4**. Plaintiffs moved for default entry against GEICO and requested a hearing for the Court to hear evidence on damages. **ECF Nos. 5**, **6**. The Court granted plaintiffs' request.[6] **ECF Nos. 7, 12**. Accordingly, the Court ordered notice be given to GEICO to its last known address. **ECF No. 7**. The Clerk of Court then entered default against GEICO. **ECF No. 8**. Notably, plaintiffs never requested default entry against Elías-Rodríguez nor did they file a motion submitting executed summons served upon Elías-Rodríguez (or a waiver thereof).

A jury-less evidentiary hearing was scheduled. **ECF No. 18**. *See Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules… require a jury trial to assess damages after entry of default.").

---

[6] GEICO failed to answer or otherwise plead in this case. Therefore, default was proper pursuant to Rule 55 (a) of the Federal Rules of Civil Procedure. F. R. Civ. P. 55(a).

E.     **Evidentiary hearing**

On June 23, 2022, the Court held the evidentiary hearing on damages. Plaintiffs' Exhibits 2, 3, 4, 6, 6-a, and 7 were admitted into evidence. *See* **ECF No. 20.** The Court ordered plaintiffs to submit a certified translation of the accident's police report, which was submitted later as Exhibit 8. *See* **ECF No. 21**. Plaintiffs and Dr. Carlos Grovas-Badrena, as plaintiffs' expert, testified. *Id*. Plaintiffs submitted their case for this Court's consideration.

II.    **Legal standard**

Fed. R. Civ. P. 55(b) states:

(b) *Entering a Default Judgment*.
(1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

Except for specific circumstances--such as the ones presented in the instant case and discussed below--, a court may conduct a hearing in order to "conduct an accounting" or "determine the amount of damages," but it is not required to do so against a defaulted party. *Innovative Sports Management, Inc. v. Serna*, 495 F.Supp.3d 36, 43 (D.Mass. 2020).

### III. Findings of fact and conclusions of law

#### A. Liability

According to the applicable caselaw, "default judgment constitutes an admission of liability[.]" *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)(quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2nd Cir. 1974)). In other words, when a party declines to participate in the judicial process it "gives up" "the right to contest liability." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002).

Accordingly, the Court **ORDERS, ADJUDGES and DECREES** that Elías-Rodríguez was negligent and that his negligent actions caused plaintiffs' damages. Therefore, joint and several liability attaches under "Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann., Tit. 31 §§ 5141 and 5142, and under the Puerto Rico Insurance Code's Direct Action Statute, P.R. Laws Ann., Tit. 26 § 2003, [for] compensatory damages for the injuries sustained by plaintiffs as a result of co-defendant's [(Elías-Rodríguez)] negligent driving of a motor vehicle." *Id.*, at 1.

### B. Evidence on Damages

While default under Fed. R. Civ. P. 55 takes care of the liability, an evidentiary hearing on damages was necessary. "[A] district court can enter a final judgment without requiring further proof of damages only in limited situations. For example, no evidentiary inquiry is necessary if the claim is for a 'sum certain.'" *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d at 19. However, this case is certainly not a "sum certain" case. *See id.*, (finding that a "sum certain" case is one in which "there is no doubt as to the amount to which a plaintiff is entitled").

Accordingly, the Court will now make its findings and determinations as to plaintiffs' damages based on the record, the evidence, and the testimony heard on the June 23, 2022 evidentiary hearing.

### (i) Plaintiff Nieves-Pepín

#### (a) Nieves-Pepín's testimony

According to her testimony, which the Court finds credible and truthful, Nieves-Pepín was born on September 7, 1966, and has been working as an Agent for the PRPD for over 25 years. She is single mother of a child.[7] Because she was sitting in the passenger's seat at the front of the patrol car, she was able to see the incoming vehicle. She tried to hold on to something but was nonetheless injured in the accident. Nieves-Pepín could hear co-plaintiff López-Martí screaming after the collision. Despite the commotion, Nieves-Pepín exited the

---

[7] There are no claims on behalf of her child.

patrol car to assist her fellow agents. She was eventually attended by paramedics and later taken to the hospital.

At the hospital, emergency room physician Dr. Raúl Vale-Flores found that she fractured her fifth finger ("pinky") in her right hand and suffered a contusion and other bodily trauma. She was discharged from the emergency room after approximately 5 hours and referred to the Puerto Rico State Insurance Fund ("PRSIF"). Nieves-Pepín testified she was submitted to two surgeries: the first on January 13, 2017 and the second on August 18, 2017. After the surgeries, Nieves-Pepín attended therapy. However, despite following all medical instructions and treatment, she still could not bend her finger.

According to her testimony, despite taking all the prescribed and over-the-counter medications, and following all medical instructions, her hand still bothers her, she suffers numbness, cramps, and is not able to make a fist with the affected hand. Nieves-Pepín specifically testified that the injuries sustained, and the resulting permanent impairment has affected her day-to-day activities and ability to perform the same type of work. Among the activities that she is not able to perform, she particularly mentioned not being able to hold onto objects such as coins or cups. Moreover, although no testimony was offered as to her wages and compensation (or more importantly for present purposes, a loss or diminution thereof), Nieves-Pepín testified that because of her impairment, she can no longer work on the "field"

and has been assigned to different work within the PRPD.[8] Specifically, she no longer patrols San Juan's tourist area but is instead assigned to guard a parking lot. Furthermore, due to her injuries, she can no longer hold rifles or take the usual PRPD's weapon training. Consequently, she testified feeling emotionally "frustrated."[9]

### (b)   Expert testimony on behalf of Nieves-Pepín

Dr. Carlos Grovas-Badrena ("Dr. Grovas-Badrena"), a Fellow of the International Academy of Independent Medical Evaluators certified by the American Board of Independent Medical Examiners and Medico-Legal Evaluator, testified as plaintiffs' expert witness.[10] Dr. Grovas-Badrena reviewed the hospital's and PRSIF's records and explained that the day of the accident Nieves-Pepín was diagnosed with two fractures. Specifically, the attending physician at the hospital, Dr. Raúl Vale-Flores, diagnosed a closed fracture of the right hand's fifth metacarpal and a closed fracture "proximal phalanx" on right hand's fifth finger. After immobilizing the injured area, and administering anti-inflammatory medication, the hospital discharged her with a referral to the PRSIF for further medical evaluation and treatment.

---

[8] Because Nieves-Pepín did not present evidence or testimony in connection with her wages, salary or a demotion. the Court will not make any assumptions as to these. Accordingly, the Court will not award damages in connection with loss of future earnings. *See Ruiz-Santiago v. E.L.A.,* 16 P.R. Offic. Trans. 376, 116 P.R.D. 306 (1985).

[9] Nieves-Pepín did not testify as to the degree of pain she felt or feels as a result of the accident.

[10] After hearing testimony as to his expertise, skills, education and experience, the Court found Dr. Grovas-Badrena qualified to testify as an expert witness. Moreover, the Court found that Dr. Grovas-Badrena's testimony and opinion "(a)… will help… understand the evidence or to determine a fact in issue; (b)… is based on sufficient facts or data; (c)… is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Dr. Grovas-Badrena clarified that the PRSIF personnel ordered x-rays and, eventually, surgery to place a metal plate and screws in the affected area. The surgery was performed on January 13, 2017. The surgeon prescribed a splint for night extension and a glove for daytime flexion of the affected area. PRSIF's physiatrists ordered physical therapies.

On August 18, 2017, Nieves-Pepín was submitted to a second surgery where the hardware placed during the first intervention was removed, and adhesions and tendons were "liberated." The PRSIF eventually discharged Nieves-Pepín with a 100% impairment of the right hand's fifth finger.

On April 5, 2021, Dr. Grovas-Badrena conducted an independent medical examination of Nieves-Pepín. After conducting several tests (testing the right hand's motion, pressure and rotation) and relying on the Guides of Evaluation of Permanent Impairment of the American Medical Association,[11] he found a 19% digital impairment of the metacarpophalangeal joint fifth finger right hand as well as a 21% digital impairment of the proximal phalanx fifth finger right hand. These findings, according to Dr. Grovas-Badrena, combine for a total of 2% "whole person" permanent impairment.

The expert also offered testimony as to the results of the injury. Specifically, he explained that the permanent impairment affects Nieves-Pepín in her personal life and her work. As discussed before, the Court heard credible testimony (both from Nieves-Pepín and her expert witness) attesting that Nieves-Pepín cannot make a first with her right hand nor can

---

[11] The expert witness explained that PRSIF's guides were outdated.

she carry out typical day-to-day activities, such as grabbing a cup with her right hand. Moreover, the injuries and permanent impairment also impacted her work, as previously discussed.

### (c) Medical expenses

In connection with her medical expenses, Nieves-Pepín only submitted evidence related to treatment by the PRSIF, which she is required to pay to the PRSIF, for a total of $5,670.00.

### (ii) López-Martí

### (a) López-Martí's testimony

López-Martí was born in 1978, is married and has four children.[12] She has been an Agent of the PRPD since 1996. According to her testimony, which the Court found credible and truthful, the day of the accident she did not see the vehicle approaching, which came in from the left side. She added that after the crash she was nervous, in pain, and screaming. She witnessed how one of her fellow officers in the car fell unconscious as a result of the impact. Although with pain, she was able to exit the patrol car after the incident and walk.

She felt "a lot of pain" in her shoulder, neck and left leg. Her neck hurt the most. Eventually, the first-responders ambulanced her to the hospital where she was evaluated by the attending emergency room physician, Dr. Raúl Vale-Flores. The doctor diagnosed her with a spasm on her cervical spine. However, no fractures were identified. After prescribing analgesic and muscle relaxers, López-Martí was discharged from the hospital.

---

[12] There are no claims on behalf of the children or by the spouse.

López-Martí was also referred to the PRSIF. She testified that the doctors at the PRSIF said they could not do anything else for her aside from ordering treatment, medication and therapies for one to one-and-a-half years. During this period of time, she endured pain in her neck shoulder and leg. Her shoulder and leg pain eased up over time, in her words "little-by-little," but her neck pain is still the same (daily pain). Ultimately, she explained, she feels frustrated about the fact that she can't do many of the things she used to do before the accident.

López-Martí's pain and injuries interfered with her work. López-Martí testified she cannot use the PRPD bullet proof vest, can no longer use rifles either and cannot participate in routine weapons training. Therefore, she can no longer do field work for the PRPD as she was doing before the accident. Normally, she would be patrolling, but now she is assigned by the PRPD to do clerical or administrative work at an office. Among other duties, she works with statistics and receives complaints of incidents that occur in the streets she used to patrol.[13]

As to her emotional damages, Nieves-Pepín only offered evidence in the form of testimony claiming that aside from the daily pain and the pain suffered the day of the incident, she feels "frustrated" because she "can't do things" and can't perform her duties as a PRPD agent.

---

[13] Because López-Martí did not present evidence or testimony in connection with her wages, salary or a demotion, the Court will not make any assumptions as to these. Accordingly, the Court will not award damages in connection with loss of future earnings. *See Ruiz-Santiago v. E.L.A.,* 16 P.R. Offic. Trans. 376, 116 P.R.D. 306 (1985).

### (b)     Expert testimony on behalf of López-Martí

Dr. Grovas-Badrena also testified as López-Martí's expert witness. Having reviewed both the hospital's and PRSIF's medical records, he explained that the day of the accident López-Martí was diagnosed with head trauma, left knee sprain, and a cervical spine spasm. The hospital did not find any fractures after x-ray exams. The hospital prescribed analgesics and muscle relaxers and recommended continued treatment after discharge.

After being discharged from the hospital on December 30, 2016, López-Martí went to PRSIF for further evaluation and treatment. She was diagnosed with head trauma, left knee contusion and a cervical sprain. The PRSIF prescribed analgesics and intramuscular steroids medication, among others. After several other tests (CT scans and Electroencephalogram) and physical therapies, a PRSIF physiatrist diagnosed López-Martí with cervical sprain, left knee contusion, and left upper sprain and ordered more physical therapies. Months after, and many physical therapies later (more than 12 therapies), an MRI study of López-Martí revealed muscle spasms with multilevel disc bulges and, as explained by the expert witness, a straitening of the back. The PRSIF prescribed anti-inflammatory medication and muscle relaxant.

In 2021, Dr. Grovas-Badrena examined López-Martí.[14] Dr. Grovas-Badrena conducted several exams to test López-Martí's cervical spine, upper body, and extremities. Using an "inclinometer" he tested López-Martí back's flexion, extension, and rotation. Among several

---

[14] According to his findings and testimony, López-Martí was under chemotherapy treatment for breast carcinoma at the time of evaluation in 2021.

other probes, Dr. Grovas-Badrena also ordered and evaluated x-ray results of 2021. Among his findings, Dr. Grovas-Badrena concluded that López-Martí suffers from a cervical sprain and strain. Using the Guides of Evaluation Permanent Impairment of the American Medical Association, a 3% "whole person" impairment was diagnosed. Although only a 3% impairment, Dr. Grovas-Badrena explained that López-Martí would also have loss or limitation on other functions in several daily and life activities.

### (c) Medical expenses

In connection with her medical expenses, López-Martí only submitted evidence related to treatment by the PRSIF, which she is required to pay, for a total of $5,623.75.

### C. Award of damages

Generally speaking, two types of damages are cognizable under Puerto Rico's tort statute: economic and moral damages.[15] *In re Caribbean Petroleum, LP*, 561 F.Supp.2d 194, 200 (D.P.R. 2008)(citing *Rivera Colón v. Díaz Arocho,* 2005 T.S.P.R. 116 at p. 17, 2005 WL 2149301).

Moral damages are those "inflicted on the beliefs, feelings, dignity, social esteem, or physical or mental health of the injured party." *Berg v. San Juan Marriott Hotel & Stellaris Casino*, 261 F.Supp.3d 213, 222 (D.P.R. 2016). The determination of moral damages does not depend "solely on… objective evidence." *In re Caribbean Petroleum, LP*, 561 F.Supp.2d at 200. Instead, it also calls for "a certain degree of speculation, inasmuch as it relies… on subjective factors such as the discretion, the sense of justice and the humane conscience of the trier of facts." *Id*.

---

[15] Because plaintiffs' economic damages are easily determinable (*i.e.* the expenses of their medical treatment charged by the PRSIF), there is no need no need to discuss the applicable law on this topic any further.

Moreover, "the district court has wide discretion in determining the appropriate award for moral damages" and, thus, "may determine the relevant period of injury suffered from the defendant's actions that is supported by the record." *Rojas–Buscaglia v. Taburno–Vasarhelyi*, 897 F.3d 15, 33 (1st Cir. 2018)(internal quotation marks omitted). After all, damage under Puerto Rico tort law includes "any material or moral loss suffered by a person." *Muñíz-Olivari v. Stiefel Laboratories, Inc.*, 441 Fed.Appx. 4, 6, 2011 WL 4446712, at *2 (1st Cir. 2011)(quoting *García-Pagán v. Shiley Caribbean*, 22 P.R. Offic. Trans. 183, 196 (P.R. 1988)).

In the complaint, Nieves-Pepín seeks damages due to her "physical limitations, emotional distress, anguish, pain and suffering" in an amount not less than $250,000.00 and "medical expenses incurred in the rehabilitating treatment provided to her at the SIFC[…] of $5,670.63." **ECF No. 1** at 8. López-Martí, for her part, seeks "physical, emotional and moral damages… in an amount not less than $250,000.00" as well as an award for "medical expenses incurred in the rehabilitating treatment provided to her at the SIFC… $5,623.75." **ECF No. 1** at 7.

Courts in this District[16] have awarded plaintiffs "Physical injuries, loss of function, disfigurement—$100,000, Pain and Suffering—$70,000" *Ortíz v. U.S.*, 885 F.Supp. 363, 367 (D.P.R. 1995)("20% and 15% [impairment]… due to loss of function in his left hand*"); see also Van Blargan v. Williams Hospitality Corp.*, 759 F.Supp. 940, 946 (D.P.R. 1991)(awarding--on

---

[16] "[F]ederal district court, in determining whether a damage award is excessive, should not compare damages awarded in a federal diversity case with damages awarded by the Supreme Court of Puerto Rico." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir. 2004).

remittitur--$115,000.00 for the pain and suffering associated with the plaintiff's mostly temporal injuries which included an "injury to the right fourth finger… injury to the lip which resulted in a permanent [injury]… head injury which healed very well… neck pains associated with pre-existing cervical arthrosis… left thumb sprain… and clinical evidence of post-traumatic stress disorder.") *Id*.

Likewise, in *Rosario-Ortega v. Star-Kist Foods, Inc.* the First Circuit held that an award of $75,000.00 was feasible for a cut of plaintiff's pinky finger while opening a can of tuna. *Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 128 (1st Cir. 2004) (reversed and remanded on other grounds in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005)). In reaching that determination, the First Circuit considered the fact that plaintiff's "finger bears a small scar and is slightly bent. Despite the successful surgery, [plaintiff] has been diagnosed with a 3% partial permanent impairment of the functioning of her hand." *Id*., at 129.

Moreover, in *Stewart v. Tupperware Corp*., 356 F.3d 335, 337 (1st Cir. 2004) the First Circuit analyzed a case of a similar car crash that, coincidently, took place near the spot where plaintiffs sustained their injuries. One of the passengers suffered "whiplash, chest trauma, cuts on her leg, and bruising on many parts of her body… [which] resulted [in] continuing chest and neck pain which has inhibited Ramírez's life[,]" including a "limit[ation] [on] the amount of work she could perform at her job." *Stewart v. Tupperware Corp*., 356 F.3d at 336-337. Similar to the case at hand, *Stewart* co-plaintiff "suffer[ed] from a permanent incapacity of 3% of her bodily functions" as a result of the accident. The First Circuit found that the *Stewart* plaintiffs

who suffered minor permanent incapacities and some emotional trauma as a result of a car crash could **each** potentially recover more than $75,000.00. *Stewart v. Tupperware Corp.*, 356 F.3d at 340.

IV. **Conclusion and awards**

Based on the evidence, the totality of the record and the findings detailed above, the Court **FINDS**, **ORDERS, ADJUDGES and DECREES** that plaintiffs have proven their damages[17] by a preponderance of the evidence and, thus, awards the following amounts:[18]

Nieves-Pepín is awarded economic damages in the amount of $5,670.63 (*see* Exhibit 4);[19] and compensatory moral damages for her physical pain in the amount of $50,000.00, plus $30,000.00 for her mental and emotional anguish.

López-Martí is awarded economic damages in the amount of $5,623.74 (*see* Exhibit 7); and compensatory moral damages for her physical pain in the amount of $60,000.00, plus $40,000.00 for her mental and emotional anguish.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March, 2023.

                                                                          **S/AIDA M. DELGADO-COLÓN**
                                                                          **United States District Judge**

---

[17] Although not in the amounts requested in the Complaint. As discussed before, each co-plaintiff seeks $250,000.00 for their physical and emotional damages.

[18] Reviewable only for "abuse of discretion." *Rojas–Buscaglia v. Taburno–Vasarhelyi*, 897 F.3d 15, 24 (1st Cir. 2018). The First Circuit Court of Appeals "will not disturb an award of damages merely because it is extremely generous, or [because] had we been deciding, we would have found the damages to be considerably less[.]" *Havinga v. Crowley Towing and Transp. Co.*, 24 F.3d 1480, 1484 (1st Cir. 1994).

[19] No other evidence of economic damages was submitted to the Court.